**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Van L. Wilson, | No. CV 11-2376-PHX-RCB (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Richard Bock, et al., | |
| Defendants. | |

    Plaintiff Van L. Wilson, who is in the custody of the Arizona Department of Corrections (ADC), filed this civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. 1.) Barcklay moves to dismiss Count II on the ground that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA).[1] (Doc. 7.)

    The Court finds that Plaintiff failed to exhaust administrative remedies on Count II and will grant the motion.

**I.     Background**

    In his First Amended Complaint, Plaintiff raised three counts.[2] (Doc. 4.) In Count

---

[1] The Court provided Plaintiff a Notice as required by Wyatt v. Terhune, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. 8.)

[2] On screening, the Court dismissed Count III for failure to state a claim and did not order service upon the Doe Defendants named in Count I. (Doc. 5.)

1  II, Plaintiff alleged that his Eighth Amendment rights were violated when Barcklay refused
2  to provide more than minimal treatment for injuries sustained in an alleged assaulted on
3  December 7, 2010, by another inmate. Plaintiff claimed that his injuries were obvious
4  because his left eye did not move with his right eye and because he could not walk.  He
5  alleged that he requested treatment on multiple occasions over a 13-day period, but Barcklay
6  refused to order x-rays or provide pain medication and Plaintiff did not receive treatment
7  other than ice packs until he was sent to the hospital on December 29 and underwent surgery
8  on his eye and it was determined that his ankle was broken.  Plaintiff alleges that he suffered
9  permanent damage to the left orbital socket and experiences continuing pain, headaches, and
10 poor vision.  (Id.)

**II.     Defendant's Motion to Dismiss**

   **A.      Legal Standard**

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).  And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007).  Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20.  Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

. . .

### B. Parties' Contentions

#### 1. Defendant

In support of her motion, Defendant submits the affidavit of Juliet Respicio-Moriarty, ADC Health Services Coordinator (Doc. 7, Ex. A, Moriarty Aff. ¶ 1); Department Order (DO) 802, Inmate Grievance Procedure, effective July 13, 2009 (id., Ex. 1); and Director's Instruction (DI) 287, Modification of DO 802, effective May 28, 2010 (id., Ex. 2).

Defendant asserts that at the time relevant to Plaintiff's Complaint, ADC had a grievance procedure governed by DO 802 and DI 287, which established the policy for inmates to follow for medical issues. (Id., Moriarty Aff. ¶ 2.) If an inmate is unable to resolve a complaint through informal means, he may submit an Informal Complaint on an Inmate Letter to the Correctional Officer (CO) III in his unit within 10 work days from the date of the action that caused the complaint. (Id., Ex. 1, DO 802.02 § 1.2.) If the complaint cannot be resolved informally, the inmate may submit a formal inmate grievance to the Grievance Coordinator/CO IV within 5 work days from the date the inmate receives a response from the CO III. (Id., DO 802.03 § 1.1.) The CO IV immediately forwards the form to the Facility Health Administrator (FHA). (Id., Ex. 2, DI 287 at DO 802.04 § 1.1.) Within 15 work days following the receipt of the formal inmate grievance, the FHA investigates the complaint; if the grievance cannot be resolved by a written response, the FHA or designee meets with the inmate prior to preparing a written response and prepares a written response. (Id., DI 287 at DO 802.04 §§ 1.1.1 - 1.1.1.6.)

If the inmate receives an unfavorable response from the FHA, he may appeal to the Assistant Director for Health Services. (Id., Ex. 1, DO 802.05 § 1.1 and E. 2, DI 287 at DO 802.06 § 1.1.) Inmates may not file an appeal to the Director until the grievance procedure within their assigned unit and institution has been exhausted. (Id., Ex. 2, DI 287 at DO 802.06 § 1.1.) The Assistant Director for Health Services reviews the medical grievances in consultation with Department physicians and contracted physicians as necessary and prepares a response for the Director's signature providing the rationale used to reach the decision. (Id., DI 287 at DO 802.06 § 1.2 - § 1.3.) The Director's response is final, thereby

1 exhausting available ADC administrative remedies for medical grievances. (Id., DI 287 at
2 DO 802.06 § 1.4.) Defendant contends that failure to appeal an issue through to the
3 Director's level constitutes a failure to exhaust the administrative remedies provided by the
4 ADC grievance process. (Id., Moriarty Aff. ¶ 3.)

5 The grievance process for standard grievances is similar except that the formal
6 grievance is responded to by the deputy warden—DI 287 at DO 802.03 § 1.5, and there are
7 two levels of grievance appeals: the first grievance appeal is submitted to the warden—DI
8 287 at DO 802.05 § 1.1, and the final appeal is to the Director—DI 287 at DO 802.07 § 1.1.
9 (Id., Ex. 2.)

10 Defendant asserts that according to the Medical Appeal Log and Medical Grievance
11 Appeal File, Plaintiff did not file a medical grievance appeal to the Director regarding the
12 claims against Barcklay in the Complaint. (Id., Moriarty Aff. ¶¶ 5-6.) She argues that
13 because Plaintiff did not fully grieve his issue, the claim is barred by the PLRA and must be
14 dismissed. (Doc. 7 at 6.)

15 **2.     Plaintiff**

16 Plaintiff opposes the motion and argues that he tried to resolve the matter but got no
17 responses to his grievances. (Doc. 9, Ex. 1.) When he received no responses, he sent all his
18 grievances to ADC Director Ryan, with no response. (Id., Ex. 2.) On April 25, 2011,
19 Plaintiff sent all his grievances to the Attorney General's Risk Management office, with no
20 response. (Id. at 1-2, Ex. 3.) Plaintiff was transferred to the ADC Kingman Complex and
21 had a family member send a letter of transfer and copies of all the grievances and medical
22 records to the Attorney General's Office, Risk Management, and Governor Jan Brewer's
23 office. (Id. at 2, Ex. 4.) Plaintiff received no response and filed his lawsuit. He asks to
24 Court to order the Yuma Complex to release all documents and reports for the date of
25 November 7, 2010, with the names of all officers involved. (Id.)

26 **3.     Reply**

27 Defendant replies that because the assault occurred on December 7, 2010, Plaintiff
28 had until December 21, 2010 to submit his informal resolution; the resolution attempt dated

1 December 25, 2010 was untimely.[3] (Doc. 11 at 2.) Defendant further argues that even if the informal resolution was timely, the grievance was untimely because the CO III had 15 work days to respond to the informal resolution and then Plaintiff had 5 work days to submit the formal grievance. (Id.) Expiration of any time limit for a response at any stage in the process entitles the grievant to move to the next step in the process—802.01 § 1.11. Plaintiff did not submit an inmate grievance until February 2011. (Id. at 3, Osorio Decl. ¶ 3.) Defendant contends that before a response was issued to the grievance, Plaintiff submitted an inmate letter withdrawing the grievance, which was so noted in the Grievance Log. (Id. at 3, Osorio Decl. ¶ 4.) In March 2011, Plaintiff advised that he wanted to reinstate the grievance and the Grievance Coordinator advised Plaintiff that he would have to restart the process. (Id. at 3, Osorio Decl. ¶ 5.) Plaintiff responded that he would go directly to the Director.

On March 16, 2011, Associate Deputy Warden Bayles received an inmate grievance from Plaintiff addressed to "Director of Prisons for ADOC Charles Ryan." (Id. at 3, Osorio, Decl. ¶ 6.) It was not processed because Plaintiff did not follow the proper procedure by restarting the inmate grievance process with a grievance addressed to the Grievance Coordinator. To the extent Plaintiff was attempting to appeal his original inmate grievance, the Director's level was not the next step in the inmate grievance procedure. (Id. at 3.) Defendant asserts that in that case, the appropriate next step was an appeal to the warden within 5 work days. Or, if Plaintiff's inmate grievance was processed as a medical grievance[1] and Plaintiff received an unfavorable response from the FHA, or no response, he would appeal to the Assistant Director for Health Services, not the Director. (Id. at 3-4.) According to Defendant, the Unit Coordinator Grievance Log does not reflect that Plaintiff's initial grievance was a medical grievance; the focus of Plaintiff's informal resolution attempt was an alleged breach of security, with only a mention of a delay in medical treatment. (Id.

---

[3] In support of the reply, Defendant submits the declarations of Teru Osorio, Associate Deputy Warden at Yuma Complex (Doc. 11, Ex. A, Osorio Decl. ¶ 1) and Aurora Aguilar, ADC Hearing Officer (id., Ex. C. Aguilar Decl. ¶ 1.)

- 5 -

at 4, n. 1; ref. Doc. 9, Ex. 1.)  Accordingly, his inmate grievance would not have followed the medical grievance process.

Defendants asserts that review of the non-medical and medical inmate grievance appeal logs at the Director's level and unit level reveals that Plaintiff did not file an inmate grievance appeal to the Director's level concerning the allegations set forth in Count II of his Complaint. (Doc. 11 at 4, Ex. C, Aguilar Decl. ¶ 6; Doc. 7, Moriarty Aff. ¶¶ 5-6.)  Plaintiff's alleged submissions to the Attorney General's Office, the Arizona Department of Administration, Risk Management, and the Governor's Office, do not comply with ADC's inmate grievance procedure.  (Id. at 5.)

**C.    Analysis**

The Court finds that Plaintiff failed to exhaust administrative remedies.  Defendant provides evidence of an available administrative remedy and Plaintiff's failure to properly exhaust under that process, and Plaintiff fails to provide a legally sufficient excuse for his failure to exhaust.  But Defendant's briefing was not particularly helpful to resolution of the issue.

Defendant's motion sets forth the process for a medical grievance, but in the reply Defendant informs the Court that the grievance in question was not processed as a medical grievance; Defendant argues that the focus of the informal resolution was the assault, not the medical care.  Defendant also argues that the informal resolution was not timely because it had to be filed within 15 work days of the assault.

The Court has reviewed the informal resolution, dated December 25, 2010, and directed to the Deputy Warden.  Parts of it are very difficult to read, but it complains about the assault and appears to complain about not receiving medical attention for a period, although the latter claim is less clear.  To the extent that the complaint was about not receiving medical attention after the assault—the issue in Count II, the informal resolution would not have to be filed within 10 work days of the assault.  The Court finds that insofar as the informal resolution complains about the medical care, it was timely.  But it was not submitted to the CO III.

1  According to Defendant, the grievance was submitted in February 2011. The
2  document provided to the Court is illegible, although the date appears to be February 14,
3  2011, and Defendant does not specify when in February the grievance was submitted. (Doc.
4  9, Ex. 1.) The CO III had 15 work days from the date of the informal resolution—December
5  25—to provide a response and Plaintiff had 5 work days from the response to file the
6  grievance. Expiration of any time limit for a response at any stage in the process entitles the
7  inmate to proceed to the next step in the process—DO 802.01 § 1.11. Therefore, the
8  grievance—even if filed on February 1—was untimely.

9  Defendant now claims that Plaintiff withdrew his grievance before a response was
10 issued and then in March advised that he wanted to reinstate the grievance and would go
11 directly to the Director. Plaintiff submitted a grievance, dated March 15, 2011; it is directed
12 to Director Ryan. (Doc. 9, Ex. 2.)  In it, Plaintiff complains about the alleged breach of
13 security and assault and about the lack of medical care. As to medical care, he said he was
14 denied medical care other than an ice pack and a bandage for his ankle until he was taken to
15 hospitals on December 30, 2010, admitted to the trauma unit, and eventually operated on.

16 As Defendant argues, if Plaintiff was attempting to appeal the original inmate
17 grievance, the next step in the standard grievance procedure would be an appeal to the
18 warden, not the Director—DO 802.04 §1.1 and DI 287 802.05 1.1—or if Plaintiff was
19 following the medical grievance procedure and he received an unfavorable or no response
20 FHA, the appeal would be directed to the Assistant Director for Health Services, not the
21 Director. (DO 802.04 § 1.6 and DI 287 at DO 802.06 § 1.1.) Either way Plaintiff failed to
22 properly exhaust his administrative remedies in accordance with the applicable ADC rules.
23 See Ngo, 548 U.S. at 92.

24 In addition, Plaintiff submits a letter from family friend Helen Sitgraves, dated May
25 5, 2011, addressed to the Office of the Attorney General, forwarding a Notice of Claim and
26 asserting that on April 26, Plaintiff was in a CO IV's office and saw the original grievance
27 forms in the officer's desk and that the officer said he had e-mailed the forms to Ryan but
28 received no response. (Doc. 9, Ex. 4.) Plaintiff also submits to the Court a Notice of Claim,

- 7 -

dated April 25, 2011.  (Id. Ex. 3.)  But as Defendant contends, neither of these actions is a step in the ADC grievance procedure, and they do not satisfy the grievance process for the constitutional claim alleged in Count II.[4]

The Court will grant Barcklay's motion and dismiss Count II without prejudice for failure to properly exhaust administrative remedies.

**IT IS ORDERED:**

(1)  The reference to the Magistrate Judge is withdrawn as to Defendant Barcklay's Motion to Dismiss Count II (Doc. 7).

(2)  Defendant Barcklay's Motion to Dismiss Count II (Doc. 7) is **granted**, and Barcklay is dismissed and Count II is dismissed without prejudice.

(3)  The remaining claim is Count I against the Doe Defendants.

DATED this 10th day of August, 2012.

_____
Robert C. Broomfield
Senior United States District Judge

---

[4] A Notice of Claim is required for a state-law claim against a public entity or public employee.  Ariz. Rev. Stat. § 12-821.01(A).